# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

GREGORY F. HARRIS,

        Petitioner,

v.                                              Case Number: 15-14448-BC
                                                  Honorable Thomas L. Ludington

PATRICK WARREN,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, DENYING LEAVE TO APPEAL IN FORMA PAUPERIS, AND DENYING MOTION TO HOLD PETITION IN ABEYANCE

**I.**

Michigan state prisoner Gregory F. Harris filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting he is being held in violation of his constitutional rights. Petitioner, who is proceeding *pro se*, challenges his second-degree murder conviction, Mich. Comp. Laws § 750.317. He seeks habeas relief on the grounds that his trial counsel was ineffective and that the prosecutor committed misconduct.

**II.**

Petitioner's convictions arise from the killing of his girlfriend, Zilphia Craig. Craig's body was found on February 1, 2011, underneath the bed in a room at the Normandy Hotel, which Petitioner had rented on a long-term basis. James Harris, Petitioner's brother, testified that, after hearing that Craig had been reported missing by her family, he asked Petitioner if he knew what happened to her. (7/27/11 Tr. at 56, 62.) Petitioner told his brother that he had killed Craig. (*Id.* at 57.) Petitioner explained that Craig "got a little loud" with him outside Petitioner's room and

Petitioner hit Craig. (*Id.*) Craig took a few steps and then fell. (*Id.*) Petitioner carried Craig back to his room and then fell asleep. (*Id.*) When he awoke the next morning, Craig was dead. (*Id.*) Petitioner told his brother that he wrapped Craig's body and put it under the bed. (*Id.*) Petitioner's brother called the police. (*Id.* at 58).

Detroit police officer Isam Qasem testified that, on February 1, 2011, he was directed to go to the Normandy Hotel. (*Id.* at 93-94.) When he entered Petitioner's room, he detected a strong smell of death. (*Id.* at 94.) Officer Qasem saw something wrapped in plastic under the bed and suspected it might be a body. (*Id.* at 94-95.) He contacted the homicide department. (*Id.* at 95.)

Detroit police officer Nathan Johnson responded to Officer Qasim's call for a homicide officer. (7/27/11 Tr. at 64-65.) Officer Johnson testified that he found a body wrapped in many layers of plastic wrap under the bed. (*Id.* at 66-67.) He also found a receipt from Home Depot, dated January 22, 2011, for the purchase of garbage bags and package-sealing tape. (*Id.* at 68.)

Dr. John Somerset, Wayne County medical examiner, performed the autopsy on February 2, 2011. (*Id.* at 123.) He testified that the cause of death was blunt force trauma to the head and the manner of death was homicide. (*Id.* at 132-33.)

Petitioner testified in his own defense. He had known Craig for about eight months. (*Id.* at 157) They lived together for approximately six months. (*Id.*) Petitioner testified that they stopped living together because of Craig's drug use but continued to see each other. (*Id.*) Craig came to his hotel room in late December 2010. (*Id.* at 159.) They planned to spend New Year's Eve together. (*Id.* at 160.) Craig asked Petitioner to get her some drugs. (*Id.*) He refused. (*Id.*) Craig left the apartment without her cane and wearing only a t-shirt. (*Id.* at 161-62.) Petitioner followed her and asked her to come back. (*Id.*) Craig ran away from him and then she fell. (*Id.* at 162) Petitioner helped her up and back to the room. (*Id.* at 162-63.) He assisted her in cleaning

up. (*Id.* at 163) She then fell asleep. (*Id.*) Petitioner let her rest for a while. (*Id.*) When he later checked on her, Craig was unresponsive, not breathing, and had no pulse. (*Id.* at 164.) Petitioner unsuccessfully attempted CPR. (*Id.*)

Petitioner did not call 911. (*Id.* at 165.) He placed Craig's body on the bed. (*Id.*) After several days he noticed an odor and covered Craig. (*Id.*) In mid-January, he purchased trash bags and tape at Home Depot, believing that wrapping Craig's body in trash bags would contain the odor and allow him to "keep her with [him] a while." (*Id.* 164-65.) Petitioner could not handle the stress of Craig's body in his room and started drinking. (*Id.* at 166-67.)

Petitioner was convicted by a jury in Wayne County Circuit Court of second-degree murder, Mich. Comp. Laws § 750.317. On August 17, 2011, he was sentenced as a fourth-habitual offender to 270 to 500 months imprisonment. Petitioner filed an appeal as of right with the Michigan Court of Appeals. The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Harris*, No. 306497, 2012 WL 6217196 (Mich. Ct. App. Aug. Dec. 13, 2012). Petitioner then filed an application for leave to appeal with the Michigan Supreme Court. The Michigan Supreme Court denied leave to appeal. *People v. Harris*, 493 Mich. 970 (Mich. April 29, 2013).

Petitioner filed a motion for relief from judgment in the trial court. He raised these claims: (i) ineffective assistance of appellate counsel; (ii) ineffective assistance of trial counsel in failing to: conduct a reasonable investigation, file a pretrial motion to suppress, consult a forensic pathologist as a defense expert witness, or object to prosecutorial misconduct; and (iii) the prosecutor committed misconduct by presenting perjured testimony and made improper comments in closing argument. The trial court denied the motion. *See* 4/25/14 Order, Wayne County Cir. Ct. (ECF No. 7-11). The Michigan Court of Appeals and Michigan Supreme Court denied

Petitioner leave to appeal. *People v. Harris,* No. 323554 (Mich. Ct. App. March 12, 2015); *People v. Harris*, 498 Mich. 949 (2015).

Petitioner then filed his federal habeas petition, raising these claims:

I. Ineffective assistance of counsel.

    A. Pretrial examination: defense Counsel failed to investigate, and in doing so did not challenge the false evidence the prosecutor used during the bind over phase of trial.

    B. Defense Counsel Mr. Bullock selected a retired police investigator to serve as a juror even after I objected with his selection.

    C. Defense Counsel Mr. Bullock failed to challenge or investigate the claims of a juror being bias even after she admitted she had a problem with being un-bias to the judge.

    D. Defense counsel failed to enter a motion suppressing evidence obtained as a result of a warrantless search of my one room apartment by Police Office Isim Qasem.

    E. Defense Counsel Mr. Bullock abdicated his ethical obligations, and expressed such contempt, as acting as a second prosecutor show on the pages listed above; he also made this statement on pg. 50 ("He did things that were disgusting, I'll admit to that").

    F. The Defense Counsel with knowledge allowed his own witness, Mr. Hurd to lie under oath for the prosecutor without letting the Court or Jury know that his witness was doing so. (TT day 3 pg. 4-27)

    G. Defense Counsel failed to object or correct any inflammatory remarks made by the prosecutor in his closing arguments.

II. Prosecutorial Misconduct

    A. The Prosecutor knowingly used the perjured evidence of the crime scene evidence technician Officer Nathan Johnson, during bind over phase, as well as during trial. ("Officer Johnson stating with the assistance of his sergeant, he moved my bed, and after opening up seventeen layers of bags that he seen a body wrapped in plastic like saran wrap.") TT pg. 64-73.

    B. The Prosecutor knew he was using false evidence while arguing his case, and failed to inform the jury and the Court he was doing so. The

       prosecutor's duty is to represent the public interest and to place the pursuit of truth and justice above the pursuit of conviction.

    C.    Both the prosecutor, as well as the Defense Counsels knowingly allowed the witness Hurd to lie without any challenges or corrections before the Court or Jury. Because the jury had the right to know that the witness was lying under oath on the witness stand.

    D.    The use of crime scene evidence technician Officer Johnson during trial: The prosecutor's investigative office should have known the sworn affidavit of Officer Johnson was perjured evidence in order not to be used by the prosecutor in his arguments during trial.

    E.    The prosecutor divided evidence during his closing arguments and doing so formed false statements.

    F.    The prosecutor's statements were obviously injecting the elements of passion, prejudice and sympathy into the jury by saying poor Ms. Craig, and during his closing arguments. TT pg. 41-42 line 16 A blind person 19-1, why was she on that stairwell? Because she failed to commit a sex act for the Defendant. So he just abandon her, told her to get out she's there fending for herself.

## III.

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if

the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.

### A.

Petitioner seeks a stay in this matter while he exhausts his state court remedies for three additional claims: counsel was ineffective in failing to investigate and present a reasonable defense; prosecutor committed misconduct; and the verdict was against the great weight of the evidence.

A federal court may stay a federal habeas petition and hold further proceedings in abeyance pending resolution of state court post-conviction proceedings provided there is good cause for failure to exhaust the claims and that the unexhausted claims are not "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 278 (2005).

Petitioner already has filed a motion for relief from judgment in the trial court under Mich. Ct. Rule 6.502, raising claims that trial and appellate counsel were ineffective and the prosecutor

committed misconduct. Under Mich. Ct. R. 6.502(G)(1)&(2), a defendant generally is entitled to file only one motion for relief from judgment, with two exceptions. The exceptions: the second motion for relief from judgment is "based on a retroactive change in law that occurred after the first motion for relief from judgment" or based on "a claim of new evidence that was not discovered before the first such motion." Mich. Ct. R. 6.502(G)(2). Neither exception applies here. Petitioner does not allege that the new claims are based on a retroactive change in law or new evidence.

**B.**

Petitioner raises seven claims of ineffective assistance of counsel. Respondent argues that these claims are procedurally defaulted and meritless. Procedural default is not, however, a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against Petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Here, the interests of judicial economy are best served by addressing the merits of Petitioner's claim.

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. In order to establish prejudice, a petitioner must show that, but for

the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

First, Petitioner argues that defense counsel was ineffective in failing to investigate and, as a result, failed to challenge false evidence presented at trial. He alleges that police officer Nathan Johnson perjured himself when he testified that the victim's body was wrapped in seventeen layers of black plastic bags. In support of this perjury claim, Petitioner cites the testimony of the medical examiner Dr. John Scott Somerset. Dr. Somerset testified that, when he received the victim's body, the bags were sealed around her body. He cut through the layers of bags but did not count them. Petitioner argues that because Dr. Somerset testified that he had to cut through sealed layers of bags, Officer Johnson's testimony that he counted seventeen layers must have been false. When making a false testimony claim, the petitioner bears the burden of showing that the testimony is actually perjured. *Brooks v. Tenn.*, 626 F.3d 878, 894 (6th Cir. 2010). "[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *Id.* at 895. Here, Petitioner has not shown that either Dr. Somerset or Officer Johnson offered perjured testimony. At worst, their testimony was somewhat inconsistent. Counsel was not ineffective for failing to challenge this testimony. Given the evidence in this case, the precise number of bags wrapped around the victim's body was not material to the elements of the crime, Petitioner's state of mind, or his guilt or innocence.

Petitioner's second and third ineffective assistance claims concern his right to a fair and impartial jury. Petitioner claims that he was denied his right to a fair and impartial jury by the presence of a retired police investigator on the jury and by counsel's failure to challenge a juror who purportedly admitted she had a problem with being unbiased.

During *voir dire*, a prospective juror, Jeffrey Bradley, stated that he was a retired Detroit Police investigator and had been retired for fifteen years at the time of the trial. (*See* 7/26/11 Tr. at 126, 130.) Bradley indicated that he was acquainted with one of the prosecution's police witnesses and with the prosecutor. (*Id.* at 126.) He believed that he could be fair and impartial and follow jury instructions. (*Id.* at 130.) Petitioner argues that, despite Bradley's assurances that he could be impartial, defense counsel was ineffective in failing to excuse Bradley because there was reason to doubt Bradley's ability to be impartial.

The trial court issued the last reasoned opinion regarding this claim in its order denying Petitioner's motion for relief from judgment. The court held Bradley's mere acquaintance with a witness and with the prosecutor insufficient to "warrant an inference of bias." *See* 4/25/13 Order at 6. The trial court found Bradley's *voir dire* testimony "that he could be fair and impartial to both sides and render an impartial verdict based on the evidence submitted at trial" sufficient to render defense counsel's decision not to exercise a peremptory strike reasonable. *Id.*

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. The right to an impartial jury is made applicable to the states by the Fourteenth Amendment. *Turner v. Louisiana*, 379 U.S. 466 (1965). "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (internal citation omitted). The presence of even a single biased juror deprives a defendant of his right to an impartial jury. *Williams v. Bagley*, 380 F.3d 932, 944 (6th Cir. 2004), citing *Morgan v. Illinois*, 504 U.S. 719, 729 (1992).

The first question when considering juror bias, is whether the juror swore under oath "'that he could set aside any opinion he might hold and decide the case on the evidence,' and whether

that 'protestation of impartiality' ought to be believed." *Id.* (quoting *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)). A "state court's finding of impartiality is a factual determination entitled to 28 U.S.C. § 2254(e)'s presumption of correctness." *Id.*

Petitioner has not rebutted the presumption of correctness afforded the state court's finding that the juror was impartial. Therefore, he cannot show that counsel was ineffective in failing to move to dismiss this juror.

Petitioner also claims that defense counsel was ineffective in failing to move to challenge a potential juror for cause when she stated that she could not be fair and impartial. Petitioner does not provide a specific transcript page reference for this potential juror's statement. After reviewing the *voir dire* testimony, the Court believes Petitioner refers to this exchange:

> Prospective Juror Saleh: Can I ask not to be on this jury?
>
> The Court: You can. And you just did.
>
> Prospective Juror Saleh: Well?
>
> The Court: No. No.
>
> Unidentified Prospective Juror: Can I just …
>
> The Court: You may.
>
> Unidentified Prospective Juror: Sort of similar to his. If I know I have a bias based on, you know, I walked out and found out why this gentleman is sitting here. Can I ask to be excused?
>
> The Court: Anybody can ask to be excused. But nobody is automatically excused. You have to go through the process. And the lawyers make the determination if your bias, in their opinion, prohibits you. You don't get to make your own decision.

Tr. at 103.

Immediately after this exchange, the court took a lunch break. When court reconvened, no reference was made to the pre-lunch discussion. Ultimately, defense counsel exercised a

peremptory strike to dismiss prospective juror Saleh. The identity of the other potential juror who participated in this pre-lunch colloquy is never made clear on the record. Nor is it clear whether this prospective juror ultimately was seated on the jury. On this bare record, the Court cannot conclude that Petitioner was deprived of his right to a fair and impartial jury.

Petitioner next asserts counsel was ineffective in failing to move to suppress evidence obtained from a warrantless search of his room at the Normandy Hotel. Detroit police officer Isam Qasem testified that, on February 1, 2011, he was directed to conduct a wellness check at the Normandy Hotel based upon a missing persons report. (7/27/11 Tr. at 93-94.) He retrieved the key to Petitioner's room from the front desk clerk and unlocked Petitioner's room. (*Id.*) He testified there was a towel underneath the door and that he noticed a strong odor of death. (*Id.* at 94.) After entering the room, he looked under the bed and found long plastic bag under the bed. (*Id.*) He assumed that there was a body in the bag. (*Id.*) At that point, he exited the room and called the homicide department. (*Id.* at 95.) Homicide detectives arrived with a search warrant and proceeded to recover evidence and the body. (*Id.*)

The trial court denied this claim when the court denied Petitioner's motion for relief from judgment. Although the trial court did not specifically explain the basis for denying this claim, the court's decision is nevertheless entitled to deference. *Harrington*, 562 U.S. at 102.

The emergency-aid exception to the warrant requirement allows law enforcement to enter a home or other dwelling "without a warrant to render emergency assistance of an injured occupant or to protect an occupant from imminent injury." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). Under Michigan law, "ironclad proof of a likely serious, life-threatening injury" is not required to invoke the emergency-aid exception. *People v. Lemons*, 299 Mich. App. 541, 548-49 (Mich. Ct. App. 2013). In this case, it would have been reasonable for defense counsel to conclude

that a motion to suppress would have been futile given testimony that officers were performing a wellness check on a missing person.

Next, Petitioner claims that defense counsel was ineffective because he acted as a second prosecutor, admitting, for example, "He did things that were disgusting. I'll admit to that." 7/28/11 Tr. at 50. Counsel's statement in closing argument calling some of Petitioner's actions "disgusting" did not render him ineffective. Counsel simply acknowledged Petitioner's testimony that, after the victim's dead body began to smell, he wrapped her in several layers of plastic bags. Counsel asked the jury to remember that the nature of this act did not show Petitioner was guilty of second-degree murder. Defense counsel's argument, far from being ineffective, was a reasonable attempt to maintain credibility with the jury while also focusing the jury's attention on the elements of the crime and the burden of proof. Counsel was not ineffective in this regard.

Petitioner argues that counsel allowed his own witness, Cleveland Anthony Hurd, to lie on the witness stand without calling it to the jury's attention. Hurd lived at the Normandy Hotel, saw Petitioner nearly every day, and saw Craig on the night she died. Parts of Hurd's trial testimony were inconsistent with statements he gave to police. For example, in his police statement, he told police that Craig had fallen on the stairs. (7/28/11 Tr. at 7-8.) During trial, he denied telling police Craig reported falling on the stairs and testified that she reported being kicked down the stairs by Petitioner. (*Id.* at 9-11.)

The state trial court held that Petitioner presented no evidence to show that Hurd's trial testimony was false. *See* 4/25/14 Order at 7. Indeed, a witness's trial testimony may vary from a prior statement for a number of reasons, including an honestly different recollection of an event after the passage of time. In any event, counsel confronted Hurd with his prior inconsistent statement. Counsel, therefore, addressed the situation immediately and used the resources

available to him (Hurd's statement to police) to highlight inconsistencies in Hurd's testimony. Petitioner fails to rebut the presumption that counsel's handling of Hurd's testimony was within the range of reasonably competent assistance.

Finally, Petitioner claims that counsel rendered ineffective assistance when he failed to object to prosecutorial misconduct. As discussed in detail below, Petitioner has not shown that the prosecutor engaged in misconduct. Counsel cannot be found ineffective for failing to raise a meritless objection.

## C.

Petitioner raises several claims of prosecutorial misconduct. The trial court held that the prosecutor's conduct did not violate Petitioner's due process right to a fair trial. *See* 4/25/14 at 8-9.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, 567 U.S. 37, 44 (June 11, 2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.,* quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). This Court must ask whether the state court's decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 567 U.S. at 47, quoting *Harrington*, 562 U.S. at 103.

First, Petitioner raises two related claims that the prosecutor knowingly used perjured testimony. A false-testimony claim falls under the *Brady* disclosure doctrine, which requires the

government to disclose evidence favorable to a defendant if it is "material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In order to establish prosecutorial misconduct or denial of due process, the defendants must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.

Dr. Somerset testified that he was the individual who opened the bags wrapped around Craig's body and that he did not count the number of bags. Officer Johnson testified that he opened up the bags and counted 17 layers. Petitioner argues that this is evidence that one of these witnesses committed perjury. As discussed above, while the testimony may have been marginally inconsistent, Petitioner falls far short of establishing that either witness lied.

Similarly, Petitioner fails to establish that witness Hurd lied. Hurd's trial testimony was inconsistent in parts with his prior police statement. But there is no evidence that the prosecutor knew that Hurd would so testify or that Hurd's trial testimony was false. The inconsistencies were addressed during Hurd's testimony and the jury was properly left to decide the question of Hurd's credibility.

Petitioner's final two claims of prosecutorial misconduct concern the prosecutor's closing argument. Petitioner argues that the prosecutor manipulated the testimony to mislead the jury and improperly injected the elements of passion, prejudice and sympathy by, for example, referring to the victim as "poor Ms. Craig." "[P]rosecutors can argue the record, highlight the inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence." *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005). The prosecutor's closing argument did just that and did not manipulate the evidence to create false assertions.

Prosecutors "must obey the cardinal rule that a prosecutor cannot make statements calculated to incite the passions and prejudices of the jurors." *Broom v. Mitchell*, 441 F.3d 392,

412 (6th Cir. 2006) (internal quotation omitted). A prosecutor does not overstep by appealing to the jurors' sense of justice. *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009). The prosecutor's language was not inflammatory, nor does it appear intended to incite passions or prejudices. The prosecutor did not did not ask the jury to convict on the basis of sympathy. Moreover, the trial court instructed the jury to base their decision only on the evidence and the law, not on their sympathies or prejudices. *See Cameron v. Pitcher*, 2001 WL 85893, *10 (E.D. Mich. Jan. 4, 2001) (holding that jury instruction advising jurors they were required to decide facts on basis of properly admitted evidence mitigated prosecutor's civic duty argument).

## V.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that a court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief with respect to any of his claims. Therefore, a certificate of appealability will be denied. Permission to appeal in forma pauperis will also be denied because an appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## VI.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus, ECF No. 1, is **DISMISSED with prejudice.**

It is further **ORDERED** that a certificate of appealability is **DENIED** and leave to appeal in forma pauperis is **DENIED**.

It is further **ORDERED** that the motion to hold the petition in abeyance, ECF No. 12, is **DENIED**.

    s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 22, 2019

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Gregory Harris** #249967, MACOMB CORRECTIONAL FACILITY, 34625 26 MILE ROAD, NEW HAVEN, MI 48048 by first class U.S. mail on March 22, 2019.

    s/Kelly Winslow
KELLY WINSLOW, Case Manager